FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 24 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Ira Silverman,

Plaintiffs,

- against -

Sito Marketing LLC, RyLo Products, LLC, Revive
Franchising, LLC, John Doe Corporations Nos. 1-
25,  Ryan Russo, Logan Chierotti, Paul Haverstick,
Ken Wilczek, Ron Gallagher, Reuben Schwartz, and
John Does Nos. 1-25,

Defendants.

Docket No.:

**COMPLAINT**

**CV 14 - 3932**

KUNTZ, J.
MANN. M.J.

Plaintiff, Ira Silverman, through his attorneys, The Law Offices of Jason Lowe, for his complaint states as follows:

**Preliminary Statement**

1. This is an action by Plaintiff Ira Silverman, a 77-year old Brooklyn resident, who invested more than $78,000 in reliance on fraudulent statements made by Defendants.

2. Defendants violated New York franchise laws by personally participating in the following violations: 1) making illegal financial performance representations which were not included in the franchise disclosure document; and 2) failing to provide Plaintiff with the franchise disclosure document before taking plaintiff's money.

3. Further, the Defendants also violationed the New York common law, New York franchise law, and RICO statutes.  These violations entitle Plaintiff to compensatory damages, punitive damages, statutory penalties, and attorney's fees.

**Parties**

1

4. Plaintiff, Ira Silverman ("Plaintiff"), is an individual residing in Brooklyn, Kings County, New York, and a citizen of the state of New York.

5. Defendant Sito Marketing LLC is on information and belief, a limited liability corporation believed to be doing business in Denver, Colorado.

6. Defendant RyLo Products LLC is on information and belief, a limited liability corporation believed to be doing business in Denver, Colorado.

7. Defendant Revive Franchising LLC is on information and belief, a limited liability corporation believed to be doing business in Denver, Colorado.

8. Sito Marketing LLC, RyLow Products LLC, and Revive Franchising LLC, are each corporations that, on information and belief, did business as or operated as Revive Energy Mints. On information and belief, they were all acting together in a manner that was deliberately confusing so as to not make it clear who the Plaintiff was doing business with. Together they are the "Defendant Corporations", "Defendant Companies", or "Corporate Defendants".

9. John Doe Corporations Nos. 1-25 are other corporations associated with the Defendant Corporations that are other actors in this action and/or are corporations which are the successors of the Defendant Corporations. On information and belief, the individual defendants illegally transferred assets from the Defendant Corporations to some of the John Doe Corporations. These corporations will be identified when their identity becomes known but are considered as part of the Defendant Corporations definition at the current time.

10. Ryan Russo is, on information and belief, a resident of Colorado. Russo was a shareholder/member of the Defendant Companies and also an officer and director of the Defendant Companies.

11. Logan Chierotti is, on information and belief, a resident of Colorado. Chierotti was a shareholder/member of the Defendant Companies and also an officer and director of the Defendant Companies.

12. Paul Haverstick is, on information and belief, a resident of Colorado. Haverstick was, on information and belief, an officer and director of the Defendant Companies.

13. Ken Wilczek is, on information and belief, a resident of Colorado. Wilczek was, on information and belief, an officer and director of the Defendant Companies.

14. Ron Gallagher is, on information and belief, a resident of Pennsylvania.

15. Ruben Schwartz is, on information and belief, a resident of Nova Scotia, Canada. Defendants Russo, Chierotti, Haverstick, Wilczek, Gallagher, and Schwartz are collectively the "individual defendants".

16. John Does No. 1-25 are individuals who acted with the individual defendants in perpetuating the actions described below and should be considered part of the individual defendants. These individuals will be identified when their identities become known.

17. Collectively the Defendant Companies and the Individual Defendants are to be referred to as the "Defendants".

### Jurisdiction and Venue

18. This Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. §1331, in that this is an action between citizens of different states for damages which exceed the jurisdictional requirements.

3

19. Jurisdiction is also predicated on 18 U.S.C. §1964 (b).

20. The Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367.

21. Venue is proper in this Court under 28 U.S.C. §1391 based on the fact that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, in that Plaintiff is a resident of Kings County, New York; the franchise business was located in Kings County, New York; Defendant's fraudulent actions occurred and were directed toward Kings County, New York; Plaintiff's documents and witnesses in support of his claims against the Defendant are primarily physically located in Kings County, New York; and Plaintiff suffered damages in Kings County, New York.

22. This Court has personal jurisdiction over the Defendants because: 1) they transacted business within the state, 2) committed tortious acts within the state, and/or 3) committed tortious acts without the state which caused injury to persons or property within the state, and (i) they did regularly solicit business, or engage in other persistent course of conduct, or derive substantial revenue from services rendered, in the state, or (ii) expect or should reasonably expect their acts to have consequences in the state and derive substantial revenue from interstate commerce, as specified in more detail in this Complaint.

### General Allegations

### I.    Plaintiff's Initial Contact With Defendants

23. In about the last three months of 2009, after reading the glowing statements on the Revive Mints website, Plaintiff contacted the Defendant Corporations about the possibility of purchasing a Revive Mints franchise.

4

24. On information and belief, Defendant Corporations sold franchises for the operation of machines that dispensed energy mints under the trade name Revive Energy Mints. The franchisee was required to buy a minimum of 25 mint distribution machines to become a franchisee. The franchisee was also required to make additional minimum mint purchases to maintain an exclusive territory.

25. After the Plaintiff sent an inquiry to the Defendant Corporations, he was contacted by the Defendant Corporations about the possibility of becoming a Revive Energy Mint franchisee.

26. When Plaintiff was first contacted by the Defendant Corporations he spoke to William Wotocheck and Defendant Chierotti. Wotocheck and Defendant Chierotti made the following misrepresentations:

   a. That Defendant Corporations had been in existence for 8 years;

   b. That Defendant Corporations had an A+ rating from the BBB;

   c. That Defendant Corporations had no complaints;

   d. That there was a selection committee for Franchisees;

   e. That the principals of the Defendant Corporations had substantial experience manufacturing candies which uniquely situated the Defendant Corporations to be able to support franchisees;

   f. That the Defendant Corporations had a national advertising campaign;

   g. The Defendant Corporations made a representation that for each machine approximately 25 mints would at minimum be expected to be sold each day;

h. The Defendant Corporations made the representation that a VP of Operations approval was necessary for the Plaintiff to even receive an information packet on the franchise opportunity with the Defendant Corporations.

27. On information and belief, none of those facts were true.

28. The Defendant Corporations were all less than 8 years old.   Revive Franchising, LLC was formed in 2009; Rylo Products, LLC was formed in 2008 and Sito Marketing LLC was formed in 2007.

29. On information and belief the Defendant Corporations never had an A+ rating with the BBB.

30. On information and belief there were multiple complaints against the Defendant Corporations when they affirmatively represented that no complaints had been made about them.

31. On information and belief there was no selection committee and the representations that there was one was a deliberate attempt by the Defendants to induce the Plaintiff to pay the Defendants money.

32. On information and belief, neither the Defendant Companies nor their principals had any experience manufacturing candies of any kind.

33. On information and belief, Defendants had no basis for making the representation that Plaintiff could expect to sell 25 mints per day from each vending machine.

34. On information and belief, the Defendant Corporations never had a national advertising campaign for Revive Energy Mints and Defendant Corporations never planned a national advertising campaign.

6

35. On information and belief, a VP of Operations approval was not necessary for Plaintiff to receive an information packet from the Defendant Corporations.

36. Defendants knew these statements were false at the time of making the statements.

37. Defendants intended for Plaintiff to rely on these statements.

38. Plaintiff did rely on these statements when deciding to enter into the Agreement and make other expenditures in order to grow his energy mint business.

39. The Plaintiff was damaged because of his reliance on these statements.

## II.   Plaintiff's Additional Due Diligence and Additional Fraudulent Statements by Defendants

40. The Plaintiff did additional due diligence before entering into a relationship with the Defendants.

41. As part of that due diligence, the Plaintiff did various internet searches on the Defendants.

42. The Plaintiff came across a website that Defendants had posted which described certain fraud in the energy mint market.  Hereinafter this website will be referred to as "the website".

43. The website described how certain companies were selling fraudulent mints and how Revive Energy Mints was a legitimate business being hurt by these other fraudulently run companies.

44. This website was created by the Defendants.

45. There was no fraud in the energy mint markets.

46. The Defendants created the website in order to deliberately conceal information on the internet about the Defendants' own previously fraudulent activity.

47. The Defendants knew that the statements made on the website were false.

48. The Defendants deliberately set up the website to conceal information about their own fraudulent activity.

49. The Defendants intended for the Plaintiff to rely on the statements on the website.

50. The Plaintiff did rely on the statements on the website.

51. The Defendants created this website in order to prevent anyone doing due diligence on the Defendants from discovering previous fraudulent activity by the Defendants.

52. The Plaintiff relief on the representations on the website when making an investment in the Defendants and when investing in his own energy mint business.

53. The Plaintiff was damaged as a result of his reliance on the misstatements on this website.

54. The Defendant Companies also referred Plaintiff to speak with Ron Gallagher and Ruben Schwartz about the franchise opportunity.

55. Defendants Gallagher and Schwartz made the following representations to Plaintiff:

    a.  That the Defendant Companies were rated by the Better Business Bureau;

    b.  That the Defendant Companies were 8 years old;

    c.  That Gallagher had been doing business with the Defendant Companies for many years;

    d.  That Defendant companies had a national advertising campaign;

    e.  That the principals in the Defendant Companies had experience in the candy manufacturing business;

    f.  That Defendant companies were going to continue with a national advertising campaign which would make it easier to place the machines.

8

56. These representations were all false.

57. Defendants Gallagher and Schwartz knew these allegations to be false at the time of making them.

58. Plaintiff relied on these allegations when making an investment in the Defendant Companies.

59. Though Defendants Gallagher and Schwartz were compensated by the Defendant Companies for the representations they made, Defendants Gallagher and Schwartz never told Plaintiff that they were being compensated.

60. Further, the Defendant Corporations deliberately covered up the fact that Defendants Gallagher and Schwartz were being compensated for their recommendation so that Plaintiff would not discover the fact.  Plaintiff did not discover this fact before he made an investment in the Defendant Companies and made further expenditures in his energy mint business.

61. In reliance on Defendants Gallagher and Schwartz's misrepresentations, Plaintiff made an investment in the Defendant Companies and made further expenditures in his energy mint business.

62. Plaintiff suffered losses because of his reliance on the misrepresentations and omissions of Defendants Gallagher and Schwartz.

63. Plaintiff suffered losses because of the deliberate concealment by Defendant Companies that they were compensating Defendants Gallagher and Schwartz for their recommendations of Defendant Companies.

**III.    Entry Into Franchise Contract and Further Misrepresentations**

64. The Plaintiff entered into a contract with the Defendant Companies in or around January of 2010.

65. Plaintiff made an initial payment to Defendant Companies of $1,000 on January 29, 2010 and an additional payment of $29,800 on February 17, 2010.

66. Under applicable federal and state law, Defendants were required to provide Plaintiff with a state-registered franchise disclosure document at least 10 business days or 14 calendar days prior to taking Plaintiff's money, and to retain a copy of the Plaintiff's signed receipt. New York Gen. Bus. L. § 683(8); 16 CFR § 436.2(a). Defendant did not provide Plaintiff with a copy of the required franchise disclosure document prior to taking Plaintiff's money. Defendant never provided Plaintiff with a copy of the required franchise disclosure document.

67. Defendants' acceptance of the $30,800 payment by Plaintiff without having first given Plaintiff the required franchise disclosure document 14 calendar days or ten business days before receipt of such payment, constituted a clear-cut violation of the state and federal franchise laws.

68. After accepting payment from Plaintiff, the Defendant Companies sent Plaintiff energy mint machines.

69. The Plaintiff made significant expenditures in order to try and place the machines in various establishments.

70. The Plaintiff noticed that it was difficult to place the machines because there was no recognition amongst the establishments that Plaintiff was trying to place the machines in.

71. The Plaintiff then spoke to Defendants Haverstick and Wilczek. Continuously from the time that Plaintiff first received the machines in February of 2010 until the end of June of

2011, Defendants Haverstick and Wilczek made false representations to Plaintiff. Those false representations included the following:

    a.  That Defendant Companies were going to be running a national advertising campaign to increase name recognition of Revive Energy mints;

    b.  That the Defendant Companies were in secure financial condition.

72. Defendants Haverstick and Wilczek knew these representations to be false.

73. Defendants Haverstick and Wilczek intended for Plaintiff to rely on these representations.

74. Plaintiff did rely on these representations.

75. Plaintiff was damaged as a result of relying on these representations and making further investments into his energy mint business.

76. In April of 2011, the Plaintiff spoke to Defendants Ken Wilczek and Paul Haverstick. Defendants Wilczek and Haverstick stated that the Corporate Defendants were in good financial condition, that a national advertising campaign was forthcoming, and encouraged the Plaintiff to make further expenditures in Plaintiff's business.

77. These representations were false.

78. Both the Defendant Corporations and the Individual Defendants knew these representations to be false.

79. Both the Defendant Corporations and the Individual Defendants intended for Plaintiff to rely on these representations.

80. The Plaintiff did rely on these representations.

81. The Plaintiff was damaged as a result of his continued representations.

82. In April of 2011, based on the continued misrepresentations of the Defendants, the Plaintiff, in order to grow his franchise, paid a fee to the 7 Eleven Association of Long Island. The money spent on this by Plaintiff was a complete loss.

83. In April of 2011, based on the continued misrepresentations of the Defendants, the Plaintiff, in order to grow his franchise, rented a booth and attended a 7 Eleven trade show. The money spent on this by Plaintiff was a complete loss.

84. In the end of June of 2012 the Plaintiff contacted the Defendants in order to set up an order and found that the Defendants no longer returned any phone calls.

85. Shortly thereafter, Plaintiff discovered that the Corporate Defendants were purportedly out of business. On information and belief, the Individual Defendants took all the assets of the Corporate Defendants for their personal benefit and/or managed to sell the Corporate Defendants in a transaction intended to defraud their creditors.

## AS FOR A FIRST CAUSE OF ACTION
### (Negligent Misrepresentation)

86. Plaintiff realleges the foregoing allegations as if fully set forth herein.

87. Defendants made material false and misleading statements to Plaintiff, as specified above, to induce Plaintiff to pay the initial fee to Defendant Corporations, and to begin activities to start-up a Revive Mint franchise in New York.

88. Defendants knew or reasonably should have known at the time of making the statements that the statements were false and misleading.

89. Defendants were aware that Plaintiff would rely upon the representations in deciding to pay the initial franchise fee and start-up a Revive Mint franchise.

90. Defendants were aware that Plaintiff would rely upon the representations in deciding to expend additional funds in attempting to grow his energy mint business.

12

91. Plaintiff relied upon the Defendants' statements in deciding to pay the initial franchisee fee and incur the expenses involved in starting up and growing his energy mint business.

92. The conduct by the Defendants evinced their understanding that Plaintiff would be relying upon their statements as described above.

93. Plaintiff suffered substantial damages as a result of Defendants' negligent misrepresentations.

94. Plaintiff is entitled to compensatory damages under the common law.

## AS FOR A SECOND CAUSE OF ACTION
### (Common Law Fraud)

95. Plaintiff realleges the foregoing allegations as if fully set forth herein.

96. Defendants made false representations of material fact to Plaintiff as specified above.

97. Defendants knew or reasonably should have known the representations were false at the time they were made.

98. Defendants made these representations with the intent that Plaintiff rely on them.

99. Plaintiff reasonably relied upon the representations to his detriment as specified above.

100. Defendants' actions were undertaken willfully, maliciously, and with reckless disregard of the Plaintiff rights.

101. Plaintiff suffered damages as a proximate result of Defendants' wrongful conduct.

102. Plaintiff is entitled to compensatory damages and punitive damages under the common law.

## AS FOR A THIRD CAUSE OF ACTION
### (New York Statutory Action for Illegal Financial Performance Representations)

103. Plaintiff realleges the foregoing allegations as if fully set forth herein.

13

104. Individual Defendants are personally liable because Defendant was a principal executive officer or director of Corporate Defendants or occupied a similar status or performed similar functions, or directly or indirectly controlled Corporate Defendants, and Individual Defendant made or materially aided in making the illegal financial performance representations as outlined above, in violation of the New York Franchise Sales Act.

105. Defendants' actions violated the New York Franchise Sales Act.

106. Defendants' statutory violations were willful and material.

107. Individual Defendants are individually liable for the violations of the New York Franchise Sales Act.

108. Plaintiff suffered substantial damages as a result of Defendants' statutory violations.

109. Plaintiff is entitled to damages and attorney's fees under the statute.

## AS FOR A FOURTH CAUSE OF ACTION
### (New York Statutory Action for Misleading Statements)

110. Plaintiff realleges the foregoing allegations as if fully set forth herein.

111. Defendants, in connection with the offer and sale of a franchise to the Plaintiff, directly and indirectly:

    a. Employed a device, scheme and artifice to defraud, in violation of NY Gen. Bus. L. § 687(2)(a).

    b. Made untrue statements of material fact and omitted to state material facts necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, in violation of NY Gen. Bus. L. § 687(2)(b).

14

c. Engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person, in violation of NY Gen. Bus. L. § 687(2)(b).

112. Individual Defendants are individually liable for the violations of the New York Franchise Sales Act because Individual Defendant were principal executive officers or directors of Corporate Defendants or occupied a similar status or performed similar functions, or directly or indirectly controlled Corporate Defendants, and Individual Defendants made or materially aided in making the illegal misleading statements as outlined above, in violation of the New York Franchise Sales Act.

113. Defendants' statutory violations were willful and material.

114. Plaintiff suffered substantial damages as a result of Defendants' statutory violations.

115. Plaintiff is entitled to damages and attorney's fees under the statute.

**AS FOR A FIFTH CAUSE OF ACTION**
**(New York Statutory Action for Failure to Provide Disclosure Document)**

116. Plaintiff realleges the foregoing allegations as if fully set forth herein.

117. Defendants did not provide Plaintiff with a copy of the franchise disclosure document at the earlier of the first personal meeting or ten days prior to the receipt of any consideration in connection with the sale or proposed sale, in violation of NY Gen. Bus. L. § 683(8).

118. Individual Defendants are personally liable because Individual Defendants were principal executive officers or directors of Corporate Defendants or occupied a similar status or performed similar functions, or directly or indirectly controlled Corporate Defendants, and Individual Defendants made or materially aided in committing the

violation, by taking and receiving a substantial portion of the initial franchise fee from Plaintiff prior to providing Plaintiff with a copy of the franchise disclosure document, in violation of the New York Franchise Sales Act.

119. Defendants' statutory violations were willful and material.

120. Plaintiff suffered substantial damages as a result of Defendants' statutory violation. NY Gen. Bus. L. § 691(1).

121. Plaintiff is entitled to damages and attorney's fees under the statute.

## AS FOR A SIXTH CAUSE OF ACTION
**(New York Statutory Unfair Trade Practices)**

122. Plaintiff realleges the foregoing allegations as if fully set forth herein.

123. Defendants engaged in deceptive acts or practices in the conduct of business, trade, or commerce in this state as specified above, in violation of NY Gen. Bus. L. § 349.

124. Defendants' acts or practices were consumer-oriented or had a broader impact on consumers at large.

125. Defendants' acts or practices were misleading in a material way.

126. Plaintiff suffered injury as a result of the deceptive acts or practices.

127. Plaintiff is entitled to compensatory damages, punitive damages, and attorney's fees, under NY Gen. Bus. L. § 349.

## AS FOR A SEVENTH CAUSE OF ACTION
**(Unjust Enrichment)**

128. Plaintiff realleges the foregoing allegations as if fully set forth herein.

129. As a result of the foregoing the Defendants have been unjustly enriched.

130. As a direct result of the aforementioned actions by the Defendants, Plaintiff has suffered severe financial harm.

131. The Defendants retained benefits as a result of the aforementioned improper, fraudulent and negligent activities. The retention of those benefits was unjust because the Defendants engaged in unconscionable conduct for which there is no justification.

132. Plaintiffs are without remedy at law to rectify their financial harm, which occurred as a direct result of the defendants' enrichment through improper and unjustifiable conduct.

133. Wherefore, the Plaintiffs are entitled to money damages.

### AS FOR AN EIGHTH CAUSE OF ACTION
**(RICO)**

134. Plaintiff realleges the foregoing allegations as if fully set forth herein.

135. At all relevant times herein, Plaintiff was a "person" within the meaning of RICO 18 USC § 1961 (3) and § 1964 (c).

136. At all relevant times herein, the Defendants were all "persons" within the meaning of 18 USC § 1961 (3) and §1962 (c).

137. At all relevant times herein, Defendants formed an association in fact for the purpose of conducting the Revive Mint Business Scheme described in detail above.

138. Such association in fact entailed Defendants inducing Plaintiff to enter into a Revive Mint franchise relationship and to defraud Plaintiff of money paid in furtherance of such franchise relationship and in building the Plaintiff's energy mint business.

139. The association in fact was an enterprise within the meaning of RICO, 18 USC § 1961 (4).

140. At all relevant times herein, the enterprise was engaged in and its activities affected interstate and foreign commerce within the meaning of RICO, 18 USC §1962 (c).

141. At all relevant times herein, the Defendants participated in, conducted, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering

17

activity, within the meaning of RICO, §18 USC 1961 (5), and in violation of RICO, §18 USC 18 1962 (c).

142. Specifically, at all relevant times, in furtherance of the Revive Mint Business Scheme, and during all of its phases including the introduction, offer, and post-contractual phases, Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce the above writings, signs, pictures, signals and/or sounds.

143. The statements in the communications set forth above, as well as in other communications made by Defendants to Plaintiffs, were false.

144. The conduct set forth above constitutes violations of 18 USC §1341 mail fraud and 18 USC §1343 wire fraud.

145. Defendants used mail and wire fraud in order to introduce Plaintiff to their illegitimate enterprise, to offer the franchise agreement to the unsuspecting Plaintiff, and in the post-contractual phase in order to preserve the Plaintiff in a state of ignorance to prolong the economic life of their scheme as long as possible.

146. Defendants' pattern of racketeering activities lasted for more than one (1) year, namely from late 2009, when the individual Defendants first introduced Plaintiff to Defendants' Revive Mint Business Scheme in the US, until at least July of 2011 when Plaintiff had difficultly contacting any of the Defendants.

147. Defendants intended their scheme to reach as many investors as possible by directing their sales pitch at hundreds of investors. In fact, the Defendants actually set up a hotline with a script aimed at inducing people to invest. The hotline and script were fashioned to attract as many investors as possible.

148. The acts described hereinabove constitute a pattern of racketeering activity, within the meaning of 18 USC §1961 (5).

149. All the alleged acts described hereinabove are related to each other by virtue of common participants, i.e. the Defendants herein, common victims (i.e. the Plaintiff herein as well as other investors who are not a party to this suit), a common method of commission and the common purpose and common result of defrauding Plaintiff of money paid to Defendants by Plaintiff purportedly for the franchise business opportunity.

150. As a result of Defendants' violations of 18 USC § 1962 (c), Plaintiffs sustained damages in an amount to be determined at trial but estimated to be no less than $78,000.

151. In addition, because of the Defendants' fraudulent and unlawful practices, Plaintiff is also entitled to punitive damages in the amount of $500,000.00.

152. Plaintiff is also entitled to treble damages plus costs and attorney's fees, pursuant to USC § 1964 (c).

### AS FOR A NINTH CAUSE OF ACTION
**(RICO Conspiracy)**

153. Plaintiff realleges the foregoing allegations as if fully set forth herein.

154. At all relevant times herein, each of the Defendant entities and individuals, their agents and/or employees, were associated with the enterprise and agreed and conspired to violate 18 USC §1962 (c) that is agreed to conduct and participate directly and indirectly, in the conduct of the enterprise through a pattern of racketeering activity, in violation of USC §1962 (d).

155. The Defendants and their agents and/or employees, committed and caused to be committed a series of overt acts in furtherance of the conspiracy to execute the Revive Mint Business Scheme, including but not limited to the acts set forth hereinabove.

156. As a result of Defendants' violations of 18 USC § 1962 (d), Plaintiff sustained damages in an amount to be determined at trial but estimated to be no less than $78,000.

157. In addition, because of the Defendants' fraudulent and unlawful practices, Plaintiff is also entitled to punitive damages in the amount of $500,000.00.

158. Plaintiff is also entitled to treble damages plus costs and attorney's fees, pursuant to USC § 1964 (c).

### AS FOR A TENTH CAUSE OF ACTION
**(Conversion)**

159. Plaintiff realleges the foregoing allegations as if fully set forth herein.

160. The Defendants have wrongfully appropriated and have wrongfully exercised permanent dominion and control over Plaintiff's funds to the exclusion of Plaintiff.

161. The exercise of dominion and control over Plaintiff's funds by the Defendants is without legal justification and constitutes conversion of Plaintiff's funds.

162. The wrongful conversion of Plaintiff's funds was accomplished through fraud, willful and wanton misconduct and/or recklessness.

163. Plaintiffs are entitled to immediate possession and control over the funds wrongfully converted by the Defendants, which total an amount to be determined at trial, plus punitive damages and interest.

### AS FOR AN ELEVENTH CAUSE OF ACTION
**(Fraudulent Concealment)**

164. Plaintiff realleges the foregoing allegations as if fully set forth herein.

165. As is detailed above, the Defendants made various misrepresentations of material fact to the Plaintiff.

20

166. Further, Defendants, despite full knowledge of the misrepresentations and the scheme to defraud, knowingly and intentionally failed to reveal to Plaintiffs essential facts including that the Defendant Haverstick was previously involved in a pyramid scheme, that Defendants Gallagher and Schwartz were being compensated for making recommendations, that the Corporate Defendants were accused of fraud before the Plaintiff entered into a relationship with them, and that, on information and belief, the Corporate Defendants were effectively insolvent during the duration of Plaintiff's relationship with the Corporate Defendants. Instead, the Defendants affirmatively sought to conceal the above. The Defendants' efforts to conceal were achieved by words and conduct, including but not limited to, affirmatively creating documentation to mask the scheme to defraud.

167. As is detailed above, such misrepresentations were false and the Defendants knew them to be false.

168. Such misrepresentations were made for the purpose of inducing the Plaintiff to rely on them.

169. Plaintiff suffered damages as a proximate result of Defendants' wrongful conduct.

170. As a result, Plaintiff is entitled to compensatory damages and punitive damages under the common law.

## AS FOR A TWELFTH CAUSE OF ACTION
### (Aiding and Abetting Fraud)

171. Plaintiff realleges the foregoing allegations as if fully set forth herein.

172. The Individual Defendants aided and abetted the Corporate Defendants in executing the fraud perpetrated by the Corporate Defendants.

21

173. The Individual Defendants must have known the true nature of the Corporate Defendants' fraud.

174. The Individual Defendants each provided substantial assistance to the Corporate Defendants in orchestrating the Corporate Defendants' fraud.

175. As is stated above, the Individual Defendants aided the Corporate Defendants by, on information and belief, going beyond their duties with the Corporate Defendants to make various misrepresentations to induce the Plaintiff to make investments in the Corporate Defendants and in his own energy mint business.

176. In addition, Defendants Gallagher and Schwartz, on information and belief, never worked for the Corporate Defendants but did make the misrepresentations stated above in order to provide substantial assistance to the Corporate Defendants in orchestrating the Corporate Defendant's fraud.

177. The Individual Defendants knew that the statements they were making were false and they intended the Plaintiff to rely on these statements.

178. The Plaintiff did rely on these statements.

179. Plaintiff has suffered substantial damages as a result of the fraud and the substantial assistance of the Individual Defendants in the Corporate Defendants' fraud.

180. The actions of the Individual Defendants were wanton and egregious.

181. Plaintiff is entitled to compensatory damages in an amount to be determined at trial, plus punitive damages in an amount sufficient to deter such misconduct in the future, and interest.

## AS FOR A THIRTEENTH CAUSE OF ACTION
### (Piercing the Corporate Veil)

182. Plaintiff realleges the foregoing allegations as if fully set forth herein.

22

183. Defendants Russo and Chierotti are controlling principals in the Corporate Defendants and the John Doe Corporate Defendants.

184. On information and belief, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 are controlling principal in the Corporate Defendants and the John Doe Corporate Defendants.

185. Defendants Russo and Chierotti exercised complete dominance over the Corporate Defendants and the John Doe Corporate Defendants.

186. On information and belief, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 exercised complete dominance over the Corporate Defendants and the John Doe Corporate Defendants.

187. Upon information and belief, Defendants Russo and Chierotti abused the privileges of doing business in the corporate form to perpetrate an injustice upon plaintiff.

188. Upon information and belief, the Defendants Haverstick, Wilczek, and John Does Nos. 1-25 abused the privileges of doing business in the corporate form to perpetrate an injustice upon plaintiff.

189. Upon information and belief, Defendants Russo and Chierotti utilized their control over the Corporate Defendants and the John Doe Corporate Defendants to commit the wrong and injustice which caused plaintiff injuries.

190. Upon information and belief, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 utilized their control over the Corporate Defendants and the John Doe Corporate Defendants to commit the wrong and injustice which caused plaintiff injuries.

191. Upon information and belief, Defendants Russo, Chierotti, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 are the majority shareholders and/or Officers,

shareholders, and directors of the Corporate Defendants and the John Doe Corporate Defendants and operate those entities in a manner as if those entities are their personal bank account and/or Defendants Russo, Chierotti, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 commingle funds of the corporation with their personal funds, pay the corporate obligations with personal funds, and pay personal expenses out of corporate accounts.

192. Upon information and belief, the records of the Corporate Defendants and the John Doe Corporate Defendants will evidence that Defendants Russo, Chierotti, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 commingled the assets of the Corporate Defendants and the John Doe Corporate Defendants and indiscriminately paid expenses of the Corporate Defendants and the John Doe Corporate Defendants from these commingled funds. Once the bank records are produced to the Court, Defendants Russo, Chierotti, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 will in all likelihood close these accounts and open new ones or devise a new means to shield the Corporate Defendants from judgments and creditors. A receiver should be placed in the premises of Corporate Defendants and the John Doe Corporate Defendants to ensure that incomes are segregated and the assets are protected and to prevent the individual defendants from further transferring or hiding assets

193. Upon information and belief, the individual actions of Defendants Russo, Chierotti, Defendants Haverstick, Wilczek and John Does Nos. 1-25 are such that a court of equity will intervene, pierce the corporate veil, and hold the Defendants Russo, Chierotti, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 personally liable.

194. That as a result of Defendants Russo, Chierotti, Defendants Haverstick, Wilczek, and John Does Nos. 1-25 conduct, plaintiff has been damaged in an amount to be determined at trial but no less than $78,000.

Wherefore, Plaintiff respectfully requests that the Court enter judgment against the Defendants jointly and severally as follows:

   A. On the First Cause of Action for compensatory damages to be determined at trial but no less than $78,000;

   B. On the Second Cause of Action for compensatory and punitive damages to be determined at trial;

   C. On the Third Cause of Action for compensatory and punitive damages to be determined at trial plus attorney's fees;

   D. On the Fourth Cause of Action for compensatory and punitive damages to be determined at trial plus attorney's fees;

   E. On the Fifth Cause of Action for compensatory and punitive damages to be determined at trial plus attorney's fees;

   F. On the Sixth Cause of Action for compensatory and punitive damages to be determined at trial plus attorney's fees;

   G. On the Seventh Cause of Action for compensatory and punitive damages to be determined at trial plus attorney's fees;

   H. On the Eighth Cause of Action for treble compensatory and punitive damages to be determined at trial but believed to be no less than $500,000;

   I. On the Ninth Cause of Action for treble compensatory and punitive damages to be determined at trial but believed to be no less than $500,000;

J. On the Tenth Cause of Action for compensatory and punitive damages to be determined at trial;

K. On the Eleventh Cause of Action for compensatory and punitive damages to be determined at trial;

L. On the Twelfth Cause of Action for compensatory and punitive damages to be determined at trial;

M. On the Thirteenth Cause of Action for compensatory and punitive damages to be determined at trial;

N. For this case to be tried before a jury;

O. For such other relief as the Court deems just and proper.


Dated: New York, New York
       June 24, 2014

                              Respectfully Submitted,

                              Law Offices of Jason Lowe

                              By:_____
                              Jason Lowe
                              Attorneys for Plaintiff
                              26 West 97th Street, 2A
                              New York, New York 10025
                              (646) 370-3023

26